UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN MARKOS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:23-cv-02125-X |
| BBG, INC. d/b/a BBG REAL ESTATE | § | |
| SERVICES, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant BBG, Inc.'s ("BBG") motion to dismiss.  (Doc. 10).  Having reviewed the motion, the applicable law, and Plaintiff Steven Markos's complaint, the Court **DENIES** the motion.

### A. Background

This is a copyright dispute between Markos and BBG, a real estate services company.[1]  Markos is a professional photographer who runs a website that hosts photographs of historical monuments and national parks.[2]  Markos alleges BBG took one of his photographs, "Tuskegee-Institute-21"—"a stylized and popular photographic image" of Thrasher Hall at Tuskegee Institute—from his website, removed his copyright mark, and posted it on its Facebook page.[3]  BBG's post was in celebration of Black History Month "spotlighting" Robert Robinson Taylor, "the first

---

[1] Doc. 7 at 2.

[2] *Id.*

[3] *Id.* at 3-4.

1

accredited African American architect"—who built Thrasher Hall.[4]  The post included

a photo of the architect and Markos's photo of Thrasher Hall.[5]



When notified that the photograph was Markos's copyrighted work, BBG

states that it removed the post from its Facebook page.[6]  Markos sued and brought

two causes of action: copyright infringement and violation of the Digital Millennium

Copyright Act ("DMCA").[7]

## II. Legal Standard

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 8 requires a pleading to state "a short and plain

statement of the claim showing that the pleader is entitled to relief."[8]  The pleading

---

[4] *See* Doc. 7-3 at 2.

[5] *Id.*

[6] Doc. 11 at 5.

[7] Doc. 7 at 5–7.

[8] FED. R. CIV. P. 8(a)(2).

standard does not require detailed factual allegations, but "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice."[9]   For a complaint to survive a motion to dismiss under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[10]   A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[11]   For purposes of a motion to dismiss, courts must accept all well-pled facts as true and construe the complaint in the light most favorable to the plaintiff.[12]

## A.  Fair Use Defense

"Rule 12(b)(6) dismissal may also be appropriate based on a successful affirmative defense provided that the affirmative defense appears on the face of the complaint"[13]—such as, fair use.   Courts "can resolve [the fair use defense] on the pleadings if the complaint contains 'facts sufficient to evaluate each of the statutory factors.'"[14]   "In other words, the pleadings must 'reveal beyond doubt that the plaintiffs can prove no set of facts' that would overcome the defense or otherwise

---

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *Id.* (cleaned up).

[11] *Id.*

[12] *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't.*, 479 F.3d 377, 379 (5th Cir. 2007).

[13] *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022) (cleaned up).

[14] *Id.* (quoting *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 560 (1985)).

entitle them to relief."[15]  Courts consider four factors under the Copyright Act when analyzing the fair-use defense:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.[16]

Courts should explore all of the factors, "and the results weighed together, in light of the purposes of copyright."[17]  And "[c]ourts typically give particular attention to factors one and four."[18]  "[U]ltimately, courts have almost complete discretion" about whether a factor is present in a case and "whether the totality favors fair use."[19]

## III.  Analysis

BBG seeks to dismiss both of Markos's claims for failure to state a claim.[20]  As to the copyright infringement claim, BBG invokes a fair-use defense.[21]  As to the

---

[15] *Id.* (cleaned up).

[16] *Id.* at 321.

[17] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994).

[18] *Bell*, 27 F.4th at 321.

[19] *Id.* (cleaned up).

[20] Doc. 10.

[21] Doc. 11 at 10–19.

DMCA claim, BBG argues Markos failed to properly plead that claim.[22]  The Court addresses each argument in turn.

### A.  Copyright Infringement Claim and Fair-Use Defense

### 1. The Purpose and Character of the Use

The Supreme Court's recent ruling in *Andy Warhol Foundation for the Visual Arts, Inc v. Goldsmith* clarified the first-factor analysis for courts.[23]  Before *Goldsmith*, this factor of the analysis generally "involve[d] a few considerations" in the Fifth Circuit: (1) commerciality; (2) "whether the user acted in good faith;" and (3) "whether the use is transformative."[24]  However, in *Goldsmith*, the Supreme Court held that "the first fair[-]use factor instead focuses on whether an allegedly infringing use has a further purpose or different character, which is a matter of degree, and the degree of difference must be weighed against other considerations, like commercialism."[25]  "The larger the difference, the more likely the first factor weighs in favor of fair use."[26]  "If an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification for copying."[27]

The Fifth Circuit has yet to address the fair-use defense since *Goldsmith*.  So, in analyzing the first factor, the Court will start by determining whether BBG's use

---

[22] *Id.* at 19–21.

[23] 598 U.S. 508 (2023).

[24] *Bell*, 27 F.4th at 321–22 (cleaned up).

[25] *Goldsmith*, 598 U.S. at 525.

[26] *Id.* at 529.

[27] *Id.* at 532–33.

of Tuskegee-Institute-21 has a different purpose or character than Markos's use of the photo, and then weigh that against other considerations like commerciality. The Court notes that—unlike in *Goldsmith* which was on appeal from the summary-judgment stage[28]—it is bound in this analysis to looking at the face of Markos's complaint, tasked with ascertaining the purposes of both Markos's and BBG's uses from the complaint alone.

From his complaint, the best the Court can glean of the purpose and character of Markos's use of the photo was to "create[e] [a] photographic catalog[] of our country's national parks, among other outdoor and historic sites."[29] Markos pleads that BBG used Tuskegee-Institute-21 "for the commercial purpose of promoting [its] real estate services business."[30] However, in Markos's briefing on the motion to dismiss, Markos seems to make contradictory arguments. First, consistent with his complaint, Markos argues that BBG used the photo on its Facebook page for a "commercial purpose."[31] But then, when discussing *Goldsmith*'s analysis of whether the purposes of the infringing use and original use were different, Markos changes course. Markos pivots to argue that his and BBG's purposes "were identical . . . [b]oth parties used the [photo] as a visual to accompany a short description of the

---

[28] *See id.* at 515–16.

[29] Doc. 7 at 2.

[30] *Id.* at 4.

[31] Doc. 15 at 7.

background of Thrasher Hall, depicting the building being referenced in their respective descriptions."[32]

BBG, on the other hand, argues that its purpose for posting the photo on its Facebook page—different from Markos's purpose of "creating photographic catalogs of . . . historic sites"[33]—was instead to "depict[] the first black architect Robert R. Taylor to show the skill of this architect during Black History Month."[34] Here, again the Court is stuck because BBG's stated purpose and character of celebrating Taylor and Black History Month are nowhere on the face of Markos's complaint.

The Court looks to *Goldsmith* for instruction. It's a case about two artists: Lynn Goldsmith and Andy Warhol. Goldsmith was a rock-and-roll photographer who photographed Prince for a magazine.[35] Warhol later made silkscreen prints based off Goldsmith's photograph of Prince.[36] One such iteration was an orange silkscreen illustration that "crops, flattens, traces, and colors" the original photograph, "but otherwise does not alter it."[37] The Andy Warhol Foundation for the Visual Arts, Inc. (AWF) then licensed his silkscreen work, "Orange Prince" to Condé Nast to accompany a magazine story about Prince, and "AWF came away with $10,000" while "Goldsmith received nothing."[38] When analyzing the first fair-use factor, the

---

[32] *Id.* at 11.

[33] Doc. 7 at 2.

[34] Doc. 18 at 7.

[35] *Goldsmith*, 598 U.S. at 515.

[36] *Id.*

[37] *Id.* at 522.

[38] *Id.* at 515.

Supreme Court didn't look at any increased message, expression, or artistic flair that Warhol injected into the photograph.  Instead, the analysis of the *purpose* was about the context the photo was in.  The Supreme Court ultimately concluded that "[e]ven though Orange Prince adds new expression," the two uses "share[d] substantially the same purpose" of being "portraits of Prince used to depict Prince in magazine stories about Prince."[39]  The Supreme Court then weighed the "substantially . . . same purpose" with the finding that AWF's use of the photo was commercial to find "both elements point in the same direction."[40]

Were the Court here to adopt a similar approach, it would seem that both Markos and BBG were fundamentally using the photo for a similar purpose: to depict Thrasher Hall—regardless of the different expression or messaging each party tried to attach to it.  But, and this is important, such an analysis of the purposes cannot be derived from the pleadings alone.  And the Fifth Circuit's guidance is clear: "[w]hen discovery is needed to flesh out how these factors tilt, a ruling at the pleading stage is premature."[41]  The Court finds this to be so, even weighed against the determination that BBG's use of the photo was commercial in nature.[42]

As each fair-use factor would have to be on the face of Markos's complaint, and the Court concludes that there is not enough information to make a determination as

---

[39] *Id.* at 526.

[40] *Id.* at 538.

[41] *Bell*, 27 F.4th at 320.

[42] Commerciality is determined by "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price."  *Harper & Row*, 471 U.S. at 562.  BBG claims its use wasn't commercial because "[t]he post had zero likes, zero comments, and zero links to purchase BBG's services."  Doc. 11 at 5.  BBG claims its use was simply to recognize Black History Month by "celebrat[ing] the achievements of the first Black accredited architect Robert R. Taylor."  *Id.*

to even the first factor, the Court need not address the remaining three factors. As

such, the Court **DENIES** BBG's motion to dismiss the copyright infringement claim.

## B. DMCA Claim

Markos alleges BBG's use of Tuskegee-Institute-21 violates Section 1202(b) of

the Digital Millennium Copyright Act.[43]  Section 1202(b) states:

> **(b) Removal or alteration of copyright management information.**—No person shall, without the authority of the copyright owner or the law—
>
> **(1)** intentionally remove or alter any copyright management information,
>
> **(2)** distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
>
> **(3)** distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

---

Markos responds that the use was commercial because the post was a part of BBG's Facebook page, "surrounded by promotional materials seeking to sell BBG's services."  Doc. 15 at 15.  A Fifth Circuit case example is helpful.  In *Bell*, an author of a book sued a school district after a softball team and flag corps used their Twitter accounts to tweet out a motivational passage from a copyrighted book.  27 F.4th at 318–19.  The Fifth Circuit found the use was noncommercial because the school didn't charge access, "pawn the work off as its own," or reproduce such a large amount of the book to save students money.  *Id.* at 322, n.1.  Notably, the tweets accredited the motivational passage to Bell, the book's author, but lacked the copyright watermark that Bell puts on his digital reproductions.  *Id.* at 319.  The Fifth Circuit found that the "tweets' only conceivable motivation was to inspire students to strive for success."  *Id.* at 322.  But the Court finds *Bell* distinguishable.  Here, there was no credit given to Markos unlike the school district attributing Bell.  And, true, BBG's post didn't link to or specifically promote any of its services.  But one need not squint to see the difference between a school's softball team's Twitter account and a for-profit real estate company's Facebook page.  The Court is tasked with looking at Markos's complaint to see if it alleges facts that meet the statutory requirement, and the complaint does so.  Doc. 7 at 4.

[43] Doc. 7 at 6–7.

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.[44]

Markos alleges BBG, when posting Tuskegee-Institute-21 on its commercial Facebook page, "removed, or caused to be removed, Mr. Markos['s] copyright notice and copyright management information embedded on the fac[e] of the [photo] as displayed on [his] website."[45] The complaint then provides a screenshot of BBG's post "altered to remove Mr. Markos's copyright management information."[46] In describing its DMCA claim, Markos further alleges that BBG "intentionally cropped" and "hid" the copyright information "knowing or having reasonable grounds to know that such actions would facilitate and[/]or conceal its infringement of Mr. Markos's copyrights, because it would make it appear that BBG owned the Copyrighted Work, or had the right to use it, and it would make it more difficult for Mr. Markos to search for his Copyrighted Work on the internet and locate BBG's infringing use."[47]

BBG makes two arguments for dismissal, but neither is persuasive. First, BBG argues that Markos's pleadings are "[t]hreadbare recitals" of the DMCA elements.[48] The Court disagrees. Markos alleges facts that BBG intentionally

---

[44] 17 U.S.C. § 1202 (b).

[45] Doc. 7 at 4.

[46] *Id.*; Doc. 7-3 at 2.

[47] Doc. 7 at 6.

[48] Doc. 18 at 11.

removed the watermark and copyright information off his photo before posting it to its Facebook page, in violation of Section 1202(b).[49]  This is sufficient.

Second, BBG argues that Markos failed to properly plead the scienter requirement of Section 1202(b).  The DMCA scienter requirement is that a party must "know" or "hav[e] reasonable grounds to know" that its conduct would "induce, enable, facilitate, or conceal an infringement."[50]  BBG mistakes what's required at the 12(b)(6) stage.  Markos does not need to have pled that "BBG authored either of the two images in the post"[51] to allege that BBG knew or had reasonable grounds to know that posting Tuskegee-Institute-21 would "induce, enable, facilitate, or conceal an infringement."  To the Court, the scienter requirement doesn't demand that much. It's enough that Markos pled that BBG knew or had reasonable grounds to know that posting the photo with the watermark removed "would make it appear that BBG owned the [photo], or had the right to use it, and it would make it more difficult for Mr. Markos to search for [the photo] on the internet and locate BBG's infringing use."[52]  It doesn't matter, as BBG claims, that one could look at the "context of the post" which would "yield[] an equal inference that BBG did not own [the photo]."[53] That type of factual determination is for a later phase of this case's life cycle.  At this stage, the Court takes all well-pled facts as true and construes Markos's allegations

---

[49] *See* Doc. 7 at 4, 6, 7.

[50] 17 U.S.C. § 1202 (b).

[51] Doc. 11 at 21.

[52] *See* Doc. 7 at 6.

[53] Doc. 11 at 21.

in a light most favorable to Markos.[54]   The pleadings as to the DMCA claim are
sufficient to survive a 12(b)(6) motion to dismiss.   Accordingly, the Court **DENIES**
BBG's motion to dismiss the DMCA claim.

## IV. Conclusion

For the reasons stated above, the Court **DENIES** BBG's motion to dismiss.  (Doc.
10).

**IT IS SO ORDERED** this 22nd day of July, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[54] *See Muhammad*, 479 F.3d at 379.